**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **GARRETT SENCIBOY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-45** |
| | ) | |
| **BNSF RAILWAY COMPANY** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | **Jury Trial Demanded** |

## COMPLAINT

The Plaintiff, Mr. Garrett Senciboy, by and through his attorneys, Tully Rinckey PLLC, as and for his Complaint against the Defendant, alleges the following:

## INTRODUCTION

1. This action is based on a wrongful discharge in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4335.
2. USERRA forbids employers to deny "retention in employment, promotion, or any benefit of employment" to an employee based on that employee's military service, to include service in the Reserve components. 38 U.S.C. § 4311(a). If the employee's military service, or his assertion of his USERRA rights, "is a motivating factor in the employer's action" in denying benefits or taking adverse action, the employer has violated USERRA. 38 U.S.C. § 4311(c).

3. Mr. Senciboy worked for BNSF Railway from 2005 to 2023. He joined the U.S. Air Force Reserve in 2021, and performed extensive military training in 2022. After his return, his supervisor complained about his absences for Air Force duty.
4. In 2023, BNSF discharged Mr. Senciboy twice on pretexts. Both accusations were weakly grounded and one was directly related to his military service. The first of the two discharges has now been overturned in arbitration. The only reason he is still discharged is because of his military service, based on a pretextual claim that he was deceptive about his military service.
5. BNSF's decision to terminate Mr. Senciboy's employment was at least partly motivated by his military service, and therefore violated USERRA.

**JURISDICTION AND VENUE**

6. This is a USERRA action by an individual against a private employer. This Court has subject matter jurisdiction over this case under 38 U.S.C. § 4323(b)(3).
7. The Defendant's headquarters is in Fort Worth, Texas. However, it does maintain places of business in the Eastern District of Missouri, to include the Chaffee Yard in Chaffee, Missouri. Venue is proper under 38 U.S.C. § 4323(c)(2).

**FACTS**

8. Mr. Senciboy went to work for Burlington Northern Santa Fe (BNSF) Railway on February 14, 2005.
9. At all times relevant to this lawsuit, Mr. Senciboy worked as a conductor, that is, a member of the train crew, responsible for operating freight trains, also helping to manage the planning of train movement, the coupling and uncoupling of train cars between trips, passing information to train dispatchers, and safety compliance on the train.

10. Mr. Senciboy's first sixteen years at BNSF were mostly successful. He earned various awards, including a Great Crossing Award in 2006; a Summer Spike Award in 2009; a Leadership Advisory Award in 2009; a Stop, Listen, and Live Award in 2010; an Injury-Free Recognition in 2010; a Best Severity Ratio Award in 2012; another Summer Spike Award in 2015; Best Derailment Performance Awards in 2015-16; a BNSF Operation Stop Red Ribbon Award in 2016; a Safety Employee of the Month Award in 2017; a Silver Spike Award in 2019, and Injury-Free Performance Awards in 2021 and 2022.

11. In March 2020, Mr. Senciboy was dismissed based on a false accusation of sleeping in the cab of a moving locomotive. In October 2021, Mr. Senciboy was reinstated after arbitration, because the accusation had been groundless.

**Mr. Senciboy's Military Service, and BNSF's Reaction to It**

12. In April 2021, while he was still dismissed, Mr. Senciboy enlisted in the Missouri Air National Guard.

13. Both before and after his 2020-2021 dismissal, BNSF's Trainmaster for St. Louis, Missouri, was Kevin Gresham. As Trainmaster, Mr. Gresham served as Mr. Senciboy's manager and first-line supervisor.

14. From January to September 2022, Mr. Senciboy was absent from work to undergo specialized Air Force training.

15. After Mr. Senciboy returned to work in 2022, Mr. Gresham made occasional hostile comments about his military service, such as, "I don't know why he had to go enlist at 40 years old like a dumbass."

16. Mr. Senciboy had make-up military training on November 23-25, 2022. Mr. Gresham expressed skepticism that he actually had military duty on Thanksgiving. Mr. Senciboy

noted a long delay in getting his military leave approved, though it was finally approved. After he returned, BNSF investigated Mr. Senciboy for alleged dishonesty on the subject, but nothing came of the accusation.

17. In 2023, Mr. Gresham accused Mr. Senciboy of "using military service to his advantage," and of using military service to "be off" from work at the railroad. Mr. Gresham also commented that Mr. Senciboy "shouldn't be off that many days." Mr. Gresham made some of these comments within earshot of Trevor Irwin, a cousin of Mr. Senciboy's who also worked for BNSF.

**BNSF Takes Action Against Mr. Senciboy—the First Pretextual Allegation, Now Overturned in Arbitration.**

18. On September 3, 2023, at 4 AM, Mr. Senciboy was working at a switchyard in Blytheville, Arkansas, when a train derailed. The derailment happened while cars were being switched from one track to another. No human beings were injured.

19. After the derailment, BSNF had Mr. Senciboy continue to work his 12-hour shift. If there had been evidence that Mr. Senciboy was responsible for the derailment, this would not have been normal practice. Mr. Senciboy would instead have been pulled off the job and given an immediate drug test.

20. Before a hearing on the subject, BNSF communicated with Mr. Senciboy through the chairman of his union local. BNSF tried to bluff Mr. Senciboy into "cooperating with the company" by saying they had video footage showing him being responsible for the derailment. If he had agreed to "cooperate" and admit guilt, BNSF would have put him on "managerial leniency," a kind of probation, for three years.

21. At the hearing, BNSF provided inadequate photographs and very doubtful testimony as to what had caused the derailment. The worst of the testimony came from Mr. Gresham, who

had already expressed his hostility to Mr. Senciboy's military service. Mr. Gresham's theory was that Mr. Senciboy had "lined" a crossover switch, i.e., that he had thrown a specific lever that would cause the train to pass from one track to another, causing the derailment.

22. However, the switch in question was over 100 feet from where Mr. Senciboy had been working, and BNSF provided no evidence as to *where* the train had actually derailed. The kind of evidence that could have confirmed Mr. Gresham's theory was simply not presented. The video evidence with which BNSF had threatened Mr. Senciboy did not exist.

23. Mr. Senciboy himself took pictures of the switch in question, which tended to show that (1) the switch might have been tripped by the train itself, and been a result rather than a cause of the derailment; and (2) the railroad ties in question were very old, so that a structural defect rather than a human error had been responsible.

24. Mr. Senciboy had not in fact derailed the train by throwing the switch in question, yet BNSF dismissed him for it in September 2023.

25. In September 2023, another conductor was responsible for a far more serious accident: a train crash in which a woman died while the conductor was asleep. This conductor had not performed Reserve service while working for BNSF. This other conductor received one year of Level S discipline, which typically means a 30-day suspension and a probationary "review period."

26. The weakness of the evidence against Mr. Senciboy, BSNF's decision to leave him on the job after the derailment, its effort to bluff him into admitting guilt, and the disproportionate punishment compared to the other conductor all tend to show that the grounds given for Mr. Senciboy's first dismissal were pretextual.

27. On January 6, 2026, a Public Law Board constituted under the Railway Labor Act found that the evidence was insufficient to sustain this accusation. As this was an arbitration panel, its findings were binding on the BNSF. Thus, if Mr. Senciboy's dismissal were based only on this derailment incident, he would now be back at work, and this lawsuit would not have been filed.

**BNSF Takes Action Against Mr. Senciboy—the Second Pretextual Allegation, Related to Military Service, Which Now Underlies His Dismissal.**

28. As a National Guard member, Mr. Senciboy was required to participate in military drill for one weekend each month, and also to perform two weeks of "annual training" each year.

29. From May 2-May 8, 2023, Mr. Senciboy was scheduled to perform part of his annual training. Mr. Senciboy applied for military leave using the appropriate "layoff code" for BNSF's system. That code was "NGD" for National Guard Duty.

30. Mr. Senciboy travelled towards his training site, intending to perform his military duty. As he was proceeding to his first day of training, Mr. Senciboy learned that his father-in-law had suffered a stroke. Mr. Senciboy's military command let him miss the rest of drill in order to spend time with his wife and father-in-law, though he did perform online training for the Guard during those days (and received appropriate credit for some of the days on that basis). By the time he learned about his father-in-law's stroke, he had already used the "NGD" code to apply for the leave.

31. On May 2, after learning of his father-in-law's issue, Mr. Senciboy called Alexa Gerardo, a BNSF employee who handles issues related to military leave. He explained the situation to her. She said that he should go spend time with his family, and that she would take care of the situation.

32. Under BNSF policy, an employee is entitled to differential pay during the time he is performing military duty; that is, he can apply for and receive the difference between his military salary and his BNSF salary while he is away. Because he knew he was not performing military duty for all the days in question, Mr. Senciboy did not request and did not receive this differential pay for his May 2-8 absence.

33. Mr. Senciboy had to make up the lost time to the Air Force by performing duty later that month. He did this, and informed BNSF that he was doing so.

34. After his dismissal for the derailment in September, BNSF accused Mr. Senciboy of "dishonesty" on the basis that he had misused the "NGD" code. The accusation was false. Mr. Senciboy had used the code when he thought he was going to be drilling those days, but he did not anticipate that his father-in-law would have a stroke. Mr. Senciboy informed BNSF immediately of his changed circumstances. Mr. Senciboy also did not request differential pay, and was not in any way deceiving BNSF as to where he had been.

35. Nonetheless, based on this pretextual allegation, BNSF re-dismissed Mr. Senciboy on December 26, 2023. BNSF claimed "dishonesty," but there had been no dishonesty on his part.

36. The weakness of the evidence against Mr. Senciboy, plus the gratuitous decision to dismiss him a second time, tend to show that BNSF knew its first dismissal was weakly grounded, and that its stated reasons were pretextual. Furthermore, BNSF's attempt to bluff Mr. Senciboy into admitting guilt to the first accusation suggests that it was planning to bring the second after he placed himself on "managerial leniency."

**Arbitration**

37. In September 2025, under the terms of a collective bargaining agreement, Mr. Senciboy was scheduled for an arbitration hearing related to his two dismissals. Mr. Senciboy was supposed to attend remotely. Through no fault his own, Mr. Senciboy was unable to join the hearing, although participants could see that he was attempting to do so. BNSF proceeded with the arbitration anyway.

38. On January 6, 2026, a Public Law Board constituted under the Railway Labor Act reviewed the decisions against Mr. Senciboy. As noted above, the Board overturned the decision against Mr. Senciboy on the first accusation, i.e., the derailment. The Board upheld the decision against Mr. Senciboy on the second accusation, i.e., misuse of the NGD code.

39. In ruling against Mr. Senciboy on the second allegation, the Public Law Board noted that Mr. Senciboy had not been present for the Railway's "investigation" into his use of the NGD code. It did not require the Railway to bring proof to a high standard, but only "substantial evidence." It found that most of his substantive arguments against this charge had been waived because he did not raise them at that hearing. It refused to consider whether dismissal was disproportionate to the offense alleged, reviewing the sanction only for "abuse of discretion."

40. In other words, with respect to the second accusation, the Public Law Board was not really considering the merits of the case, as it had with respect to the first. It was not analyzing testimony from both sides, it was not using a high standard of proof for its findings, and it was not assessing whether the penalty was suspiciously disproportionate to the alleged offense. The Board's findings are not binding on this court and are not very probative of the matters at issue in this case.

## LEGAL CLAIM

**Wrongful Discharge Under USERRA, 38 U.S.C. § 4311.**

41. Under 38 U.S.C. § 4311(a), a person who performs military service shall not be denied "retention in employment" or any other benefit of employment based on his service.

42. Under 38 U.S.C. § 4311(c)(1), if military service is "a motivating factor" in an adverse action (such as a termination), then the action is prohibited under USERRA, "unless the employer can prove that the action would have been taken in the absence of such…service…"

43. A *prima facie* case of improper discharge, combined with pretextual reasons given by an employer for the discharge, can support a finding of improper discharge.

44. Mr. Senciboy's two dismissals—that is, the two that are at issue in this case—both followed an eight-month stretch of active duty.

45. Mr. Senciboy's supervisor started expressing frustration with his enlistment soon after he returned to work from an earlier, unjustified dismissal. The supervisor also expressed suspicion and disrespect of Mr. Senciboy's military service. The year after his enlistment, Mr. Senciboy was absent for about eight months to engage in military training (January-September 2022). A year after his return, he was subjected to two weakly-grounded dismissals.

46. The first dismissal was a pretext, as shown by the weakness of the evidence behind it, and by BNSF's efforts to bluff Mr. Senciboy into admitting guilt. The second dismissal was also a pretext, as shown by the weakness of the evidence, but it also reveals that BNSF was concerned about Mr. Senciboy's military service, and with not having to accommodate to it. BNSF's decision to proceed with an arbitration hearing in Mr. Senciboy's absence also tends to show that BNSF knew its accusations were weakly grounded, and thus pretextual.

47. Both dismissals followed Mr. Senciboy's long absence for military training, and both followed comments by his supervisor, comments that were hostile to his service.

48. Accordingly, Mr. Senciboy's dismissal from BNSF was at least partly motivated by his military service, and violated 38 U.S.C. § 4311(a).

## PRAYER FOR RELIEF

Wherefore, Mr. Senciboy requests the following relief:

1. Reinstatement with BNSF Railway, or if reinstatement is not practical, front pay, in a number of years to be determined by the court.

2. Back pay from the date of termination to the date of judgment, minus any amounts Mr. Senciboy has earned in the meantime through his other work.

3. Liquidated damages and interest under 38 U.S.C. § 4323(d)(1)(D).

4. Attorney's fees and costs under 38 U.S.C. § 4323(h)(2).

5. Such further relief as this Court deems just and proper.

February 19, 2026.

Respectfully Submitted,

//ss Michelle Alvarado Salermo
Michelle A. Salermo
Associate, Tully Rinckey PLLC
5488 Sheridan Drive, Ste. 500
Buffalo, NY 14221
(716) 272-3015
msalermo@tullylegal.com
Bar No: 0505805 (MN)

Joseph D. Wilkinson II
Senior Counsel, Tully Rinckey PLLC
2001 L Street NW, Ste. 902

Washington, DC 20036
(202) 375-2232
jwilkinson@tullylegal.com
Bar No: 90032185 (DC)

Sean C Timmons

Sean C. Timmons, Esq., LL.M.
Managing Partner, Tully Rinckey PLLC
18722 University Blvd., Ste. 235
Sugar Land, TX 77479
(832) 240-3273 Phone
(281) 387-3411 Cell
(832) 241-5998 FAX
Stimmons@tullylegal.com
Bar No: 24067908 (TX)

Attorneys for Plaintiff